**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Museum Associates, Ltd., a Washington corporation and Richard Berger, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>Gary Midzor, an individual; Chris Ivey, an individual; GM Property Development, LLC, an Arizona limited liability corporation; Tina Choate, an individual; Brian Meyers, an individual; Goldstone Management, LLC, an Arizona limited liability corporation; Craig Ramsell, an individual; Kailasa Enterprises, LLC, an Arizona limited liability corporation; and Dirck's Moving Services, Inc, an Arizona corporation,<br><br>Defendants. | No. CV 10-01042-PHX-NVW<br><br>**ORDER** |

Before the Court is "Plaintiffs' Motion for Partial Summary Judgment on the Issue of Breach of Contract as to Defendant Craig Ramsell and Kailasa Enterprises" (Doc. 182), "Defendants Kailasa Enterprises, LLC and Craig Ramsell's Cross Motion for Summary Judgment" (Doc. 197), and Ramsell/Kailasa's "Motion to Strike Plaintiffs' Rebuttal Expert" (Doc. 209). These motions are scheduled for oral argument on February 2, 2012. After further consideration, the motions may be resolved without further argument. For the reasons stated below, the Court will deny Plaintiffs' motion,

grant Ramsell/Kailasa's cross-motion, and deny Ramsell/Kailasa's motion to strike as moot. Oral argument will be vacated.

Throughout this order, Plaintiffs will be referred to collectively as "Berger." Ramsell and Kailasa Enterprises will be referred to collectively as "Ramsell." The Court understands that certain of Ramsell's arguments turn on separate treatment for him and Kailasa Enterprises, but resolving those arguments is not necessary to the outcome of these motions. The Court's use of "Ramsell" collectively is for convenience only and not meant as a factual or legal statement about the relationship between Ramsell and Kailasa Enterprises.

## I. BACKGROUND

As between Berger and Ramsell, the following facts are undisputed unless attributed to a party.

### A. The Master Works Collection

Berger is in the business of acquiring rare natural crystals and fossils, and sometimes re-selling them to collectors and museums. Over a 35-year period, Berger amassed a valuable private collection of crystals and fossils. This collection is sometimes known as "The Master Works of the Earth." Berger stored his collection in a warehouse in Kent Valley, Washington, near Seattle.

In 1995, Berger first met Defendants Brian Myers and Tina Choate, who resided in Sedona, Arizona. Myers and Choate represented themselves as the principals of Defendant Goldstone Management, LLC. Myers and Choate expressed interest in purchasing the Master Works collection, with the eventual plan to display it in a museum, likely in Sedona. Myers and Choate said that an "international financier" would be a part of the transaction. Berger believed the transaction would be completed within a few months, but those months stretched into years, with repeated assurances from Myers and Choate that the sale would eventually close.

## B. The Move to Sedona and the Plaza Kailasa Lease

In September and October 2009, Kent Valley, Washington, came under threat of flooding due to concerns over the stability of an upstream dam. The warehouse storing the Master Works collection was in the floodplain of this dam. Berger decided to move the collection. He looked for other warehouses in the Seattle area, but the collection's insurer would not approve any of those alternative warehouses.

Berger then described his dilemma to Myers and Choate. They suggested that Berger should move his collection to Sedona because the long-planned sale was "imminent" anyway. While Berger considered this plan, Myers told Ramsell that Myers and certain "unidentified business partners" (*i.e.*, Berger and Choate) were considering moving a valuable gem collection to Sedona. Ramsell suggested that Myers should store the collection at Plaza Kailasa, a commercial property in Sedona owned by Ramsell. Myers had recently entered into a purchase agreement to buy Plaza Kailasa from Ramsell. The sale had not yet closed, but Ramsell suggested that Myers might as well lease storage space in Plaza Kailasa, since he was eventually going to buy the property anyway.

Ramsell began drafting a proposed lease agreement. During this process, Ramsell learned that Berger was one of Myers's business partners. Nonetheless, Ramsell had no contact with Berger about the lease. He instead gave the proposed lease to Myers, who in turn gave it to Berger. Berger read through the entire lease, which included (among other terms) a provision placing the duty of security on the tenant:

> Tenant hereby acknowledges that the rental payable to Landlord hereunder does not include the cost of guard service or other security measures, and that Landlord shall have no obligation whatsoever to provide same. Tenant assumes all responsibility for the protection of the premises, Tenant, its agents, guests, and invitees and their property from the acts of third parties.

(Doc. 183-3 at 10 ¶ 41.) Berger, Ramsell, and Myers all eventually signed this agreement on behalf of their respective business entities. The date on which they signed is unclear,

although the lease agreement declares itself effective as of November 4, 2009. The lease is governed by Arizona law.

The parties to the lease did not haggle over any of the lease terms as drafted by Ramsell. However, the lease also contains a two-part addendum drafted by Berger. As with the lease, Ramsell and Berger never communicated directly about the addendum. Berger sent it to Ramsell through Myers. Part A of the addendum, titled "Ownership and Conditions of Access," states:

> Kailasa Enterprises LLC and Craig Ramsell acknowledge that, while payments of rent and any requisite fees for storage of the fossils and minerals . . . will be paid by Goldstone Management LLC, the property to be stored belongs solely and exclusively to Richard Berger/Museum Associates, Ltd.
>
> Under no circumstances may the property/inventory be released, delivered, or removed from the premises nor can Kailasa Enterprises accept instructions with regard to the disposition of said property, except under the express joint written consent of Richard Berger, Brian Myers and Tina Choate . . . .

(Doc. 183-3 at 12.) Part A went on to provide two different phone numbers for Berger, and one phone number each for Myers and Choate, at which they could be contacted "[u]nder emergency conditions, if immediate access is required to the premises." (*Id*.)

Part B of the addendum is titled "Non-Disclosure Agreement," and provides in relevant part:

> It is recognized and agreed by all parties to this Agreement that strict confidentiality must be maintained concerning the whereabouts of the Masterworks Collection. The Masterworks Collection is an internationally acclaimed and recognized property and any public exposure . . . could significantly risk the safety and security of the Collection. Therefore Craig and Monnie Ramsell [Craig's wife] agree, to the best of their ability, to keep all information concerning said Collection fully confidential . . . .

(*Id*. at 13.)

Berger, Myers, Choate, Ramsell, and Ramsell's wife all executed this addendum. The addendum declares itself effective as of November 4, 2009 (the same date as the lease), although it is not clear when the addendum was written or executed.

Berger had the collection moved from Washington to Sedona in November 2009. Berger paid for the move with funds supposedly provided by the international financier. Once the collection was moved in, only Berger, Myers, and Choate had keys to the collection and the security alarm access code. Ramsell could not access the collection.

### C. The Midzor Transaction and Seizure of the Collection

Around this same time, Myers began negotiating a property transaction with since-dismissed Defendants Gary Midzor, Chris Ivey, and GM Property Development, LLC (collectively "Midzor" for purposes of this motion). Myers intended to buy a certain property from Midzor and resell it, hoping that profits from the resale could be used to buy the Master Works collection. Unbeknownst to Berger or Ramsell, Myers entered into a purchase agreement with Midzor and pledged the collection as security. Myers did not have actual authority to make such a pledge, but he told Midzor otherwise.

A few months later, Myers defaulted on his purchase agreement with Midzor and Midzor demanded to take possession of the collection. Myers acquiesced, giving Midzor the keys and alarm code. Midzor then sent a moving crew to Plaza Kailasa to seize the collection.

As Midzor's moving crew was loading the collection into trucks, another Plaza Kailasa tenant called Ramsell to tell him that unidentified persons were removing the collection. Ramsell in turn called Myers to ask for an explanation. Myers told Ramsell that the collection's insurer insisted on the move because Plaza Kailasa was not sufficiently secure. Ramsell then went out to Plaza Kailasa. According to Ramsell, he spotted

> a guy standing there just kind of like looking like he was keeping an eye on things. . . .

> So I went up and said, are you the guy with the insurance company? Or so you're with the insurance company? Something like that. And I got some kind of an affirmative. I don't remember if it was verbal or a nod of the head, but it was a positive indication to me that, yeah, with the insurance company.
>
> So I introduced myself and told him, I'm Craig Ramsell. I have the company that owns the building, and that's why I'm here. I'm just making sure that my building's in good shape while everything is being moved. And he just kind of acknowledged, okay, and that was it. Everything looked fine to me, and I left. I don't think I was there for more than about two minutes.

(Doc. 198-1 at 28–29.) Ramsell took no other action with respect to the collection.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party would bear the burden of persuasion at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105–06 (9th Cir. 2000).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(c). But allegedly disputed facts must be material — the existence of only "*some* alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, the nonmoving party's properly presented evidence is presumed to be true and all inferences from the evidence are drawn in the light most favorable to that party. *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987).

### III. ANALYSIS OF CONTRACT CLAIMS (COUNTS THREE & FOUR)

Berger asserts causes of action against Ramsell for breach of contract and breach of good faith and fair dealing. Berger specifically claims that Ramsell breached the lease addendum by permitting Midzor to take the collection from Plaza Kailasa. Berger has moved to establish such breach and Ramsell has cross-moved to establish lack of breach (or at least lack of liability).

The specific language of the lease addendum at issue is the following:

> Under no circumstances may the property/inventory be released, delivered, or removed from the premises nor can Kailasa Enterprises accept instructions with regard to the disposition of said property, except under the express joint written consent of Richard Berger, Brian Myers and Tina Choate . . . .

(Doc. 183-3 at 12.) Whether Ramsell breached this clause depends on what it means, which is a question for the Court to decide. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, 218 P.3d 1045, 1050 (Ct. App. 2009) ("the interpretation of a contract is a question of law"). In approaching this question, the Court's task is to provide

> a reasonable construction so as to accomplish the intention of the parties. Contracts are to be read in light of the parties' intentions as reflected by their language and in view of all circumstances; if the intention of the parties is clear from such a reading, there is no ambiguity. If the meaning remains uncertain after application of primary standards of construction, including consideration of the surrounding circumstances, a secondary rule of construction provides that

- 7 -

> ambiguity is to be strictly construed against the drafting party. Furthermore, whatever is expected by one party to a contract, and known to be so expected by the other, is deemed a part or condition of the contract.

*Harris v. Harris*, 195 Ariz. 559, 562, 991 P.2d 262, 265 (Ct. App. 1999) (citations omitted).

The addendum clause at issue mixes active and passive voice, creating the first interpretive difficulty. The addendum tells Kailasa Enterprises specifically that it may not "accept instructions with regard to the disposition of [the collection]," but the addendum does not specify an actor when it forbids "release[], deliver[y], or remov[al] from the premises." In context, however, this injunction against release, delivery, or removal is obviously intended to restrict Ramsell to some degree.

How far these prohibitions extend is the next question. The lease assigned the responsibility for security to Berger, Choate, and Myers — not Ramsell. The addendum therefore cannot be interpreted as an obligation to protect the collection against all the world. Rather, the entire addendum as a whole — *i.e.*, reading the access restrictions together with the non-disclosure provision — demonstrates that Berger had in mind situations like the one that arose in this case: someone with designs upon the collection attempting to remove it under the ruse of a legitimate purpose. Berger therefore wanted "the express joint written consent of [himself], Brian Myers and Tina Choate" as a three-way failsafe.

But considering the parties' arrangements, the failsafe had no material relevance to Ramsell. Ramsell possessed neither the keys nor the alarm access codes — as contemplated by the addendum when it specified the phone numbers to call "[u]nder emergency conditions, if immediate access is required to the premises." Thus, even if Midzor's moving crew had come to Ramsell bearing the "the express joint written consent" of Berger, Myers, and Choate, Ramsell could not have released, delivered, or removed the collection, or accepted instructions with regard to its disposition. The most Ramsell could have said was, "The collection is yours if you can get in." Ramsell was

superfluous. Neither Midzor's moving crew nor anyone else with designs on the collection would have any use for him. Had Ramsell's other tenant at Plaza Kailasa not seen the moving crew, Ramsell may have never learned about the collection's seizure until it was all over.

Therefore, the addendum can only apply to the circumstances that arose in this case: Ramsell, by chance, learned about others removing the collection before they completed their task. Berger nonetheless contends that Ramsell's performance under the contract depended on his ability to prevent the collection's removal: "Defendants [Ramsell and Kailasa Enterprises] are correct in their [cross-]motion when they state that Mr. Ramsell would have first had to have stopped the Collection from being removed. Mr. Ramsell's failure to do this is precisely why he breached the specific terms of the contract." (Doc. 219 at 5.)

This is a surprising and unreasonable interpretation. *Cf. Restatement (Second) of Contracts* § 203(a) (1981) (disfavoring interpretations that render portions of a contract "unreasonable . . . or of no effect"). Berger was not paying Ramsell for security services, nor did Ramsell have any way of accessing the collection. Had Ramsell known that expectations were otherwise, he could have taken appropriate precautions — such as round-the-clock security, added liability insurance, and so forth. But Ramsell did not know and no language in the contract or any other evidence suggests that he had reason to know of an obligation to provide security or prevent removal.

Having considered "the parties' intentions as reflected by their language and in view of all circumstances," *Harris*, 195 Ariz. at 562, 991 P.2d at 265, the paragraph of the addendum at issue remains ambiguous. Such "ambiguity is to be strictly construed against the drafting party [*i.e.*, Berger]." *Id.* In these circumstances, the appropriate construction against Berger — and the only reasonable construction in any event — is that Ramsell could not release, deliver, remove, or accept instructions with regard to the removal of the collection *to the extent the collection was under his control*. However, at no time did the collection come under Ramsell's control. Ramsell therefore did not

breach the addendum. Summary judgment will accordingly be granted in his favor on Berger's contract causes of action.

## IV. ANALYSIS OF REMAINING CLAIMS

### A. Tortious Interference with Contract (Count Five)

Berger has withdrawn his tortious interference claim against Ramsell "based upon the discovery conducted following the filing of the Amended Complaint." (Doc. 219 at 6.) Accordingly, summary judgment for Ramsell will be entered on this cause of action.

### B. Negligence (Count Six)

Berger has also sued Ramsell for negligence. The only explanation in the record of Berger's negligence theory comes from his amended complaint, which claims: "Defendants owed a duty of care to Plaintiff since the Collection had been entrusted to Defendants for safekeeping. [¶] Defendants breached that duty by allowing the Collection to leave the warehouse." (Doc. 71 at ¶¶ 120–21.) Berger has nowhere explained how placing the collection in Ramsell's storage space created any duties beyond those specified in the lease and addendum. *Cf.* 8A Am. Jur. *Bailments* § 85 ("The parties to a bailment relationship may abrogate the law of bailment by making their own express contract that may enlarge, abridge, qualify, or supersede the obligations which otherwise would arise from the bailment by implication of law."). Berger has also not explained how "the Collection had been entrusted to Defendants *for safekeeping*" (emphasis added) in light of the lease's disclaimer of security and the fact that Ramsell had neither the keys nor the alarm code. Berger has entirely failed to substantiate this claim and summary judgment will be granted for Ramsell.

### C. Negligent Infliction of Emotional Distress (Count Seven)

Finally, Berger asserts that Ramsell is liable for negligent infliction of emotional distress. By separate order, the Court excluded Berger's evidence of emotional damages. (Doc. 228.) Berger therefore has no evidence to support this claim and summary judgment will be granted for Ramsell.

## V. RAMSELL'S MOTION TO STRIKE PLAINTIFFS' REBUTTAL EXPERT

Ramsell's motion to strike Berger's police practices rebuttal expert addresses issues that are now irrelevant. The question of police practices arose in this case only because Berger claimed that the addendum at least obligated Ramsell to call the police, and Ramsell countered that calling the police would not have stopped Midzor's moving crew. Ramsell's and Berger's experts dispute what the police would have done in such a situation.

Given that Ramsell's obligations under the addendum never came into play, the question of whether the addendum required him to call the police, and what the police would have done, is moot. Ramsell's motion to strike will be denied accordingly.

IT IS THEREFORE ORDERED that "Plaintiffs' Motion for Partial Summary Judgment on the Issue of Breach of Contract as to Defendant Craig Ramsell and Kailasa Enterprises" (Doc. 182) is DENIED.

IT IS FURTHER ORDERED that "Defendants Kailasa Enterprises, LLC and Craig Ramsell's Cross Motion for Summary Judgment" (Doc. 197) is GRANTED.

IT IS FURTHER ORDERED that Defendant Ramsell's and Defendant Kailasa Enterprises' "Motion to Strike Plaintiffs' Rebuttal Expert" (Doc. 209) is DENIED as moot.

IT IS FURTHER ORDERED that oral argument scheduled for February 2, 2012, at 2:00 p.m., is VACATED.

Dated this 13th day of January, 2012.

_____
Neil V. Wake
United States District Judge